UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
97 AUG 19 PM 3:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| JAMES L. DAVENPORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-96-PT-1448-E |
| | ) | |
| SPIRIT CONSTRUCTION SERVICES, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
AUG 1 9 1997

Memorandum Opinion

This cause comes on to be heard on the defendant's Motion for Summary Judgment filed on June 17, 1997. The plaintiff has alleged that the defendant unlawfully discriminated against him because of a perceived disability and because of his age in violation of the American with Disabilities Act and the Age Discrimination in Employment Act.

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes prove the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing the presence of a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . " in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). Considering the above, this court must examine the evidence to determine the existence of genuine issues of material fact as to the various claims.

## BACKGROUND

Spirit Construction Services, Inc. (Spirit) is a national construction company specializing in the construction, modernization, and expansion of paper processing facilities. As part of a competitive bid process, the Kimberly-Clark facility in Coosa Pines, Alabama awarded Spirit several contracts for renovation and expansion. Spirit thus assembled a team of local skilled workers to complete the construction.

Around December 2, 1992, Spirit hired fifty-year-old James L. Davenport (Davenport) as a pipefitter. Davenport worked on several contracts or projects with Spirit.

2

While working on the "E-Bleachery" project, Davenport sustained a hernia and required several operations. This injury kept him out of work for four weeks. Throughout this time, Spirit paid Davenport his full weekly wage. Upon his return to work, Spirit named Davenport warehouse foreman. Shortly after Davenport became warehouse foreman, the "E-Bleachery" project was completed and he was kept on as warehouse foreman for the 'De-Inking" project. Midway through the "De-Inking" project, Davenport began to suffer unstable angina and was admitted to the hospital for evaluation and eventual open heart surgery.[1]

Davenport's doctors ultimately released him to work on February 20, 1995. Davenport never returned to work, however, because Spirit laid him off.

## CONTENTIONS

### 1. ADA

Davenport first contends that Spirit fired him in violation of the American with Disabilities Act. He claims that he was a "qualified individual with a disability" because Spirit "regarded him as having a physical impairment that substantially limited his ability to work." See 42 U.S.C. § 12102(2) (1988). As support, Davenport notes that Daniel Earman, the personnel manager for Spirit, stated that Davenport's employment with Spirit ended because of "medical problems." Davenport also notes that his personnel file showed that he was "[r]eleased due to medical problems, not work related."

Spirit, however, contends that Davenport cannot establish a prima facie case of disability discrimination.[2] Spirit claims that all construction employees on the Kimberly-Clark project knew that employment with Spirit was not an indefinite career opportunity,

---

[1] This apparently took place in January of 1995, but it is unclear from the facts on what date Davenport was required to leave work because of his heart problems.

[2] In its only brief, Spirit argues at length that Davenport was not disabled under the meaning of the ADA. In response, Davenport did not argue that he was actually disabled but that Spirit perceived him as having a disability. Spirit, in turn, did not address this argument. The court, however, considers Spirit's position somewhat probative of whether it regarded Davenport as disabled.

3

but a "one shot opportunity." Participation in an ongoing contract at the facility, Spirit argues, thus would not guarantee continued employment and involvement in other contracts under completion at the same facility. It further contends that each employee worked on a distinct portion of each contract and would knowingly be released at the completion of that job as part of an overall reduction in forces. As to Davenport's situation, Spirit claims that the De-Inking project work was winding down when Davenport had heart surgery. Spirit claims that it did not replace Davenport nor did it name a new warehouse foreman to the project. Instead, Spirit claims that it assigned two helpers to do the remaining warehouse work until it eliminated the job. By the time Davenport's doctors released him to work, Spirit claims that the De-Inking project was winding down, it had significantly reduced its forces, and no work existed for Davenport. Consequently, Spirit claims, it made Davenport a part of the reduction in force.

     Davenport argues, nevertheless, that Spirit's articulated reason is pretextual. Davenport again notes that doctors released him to work on February 20 and that others were still doing his job on March 20 of that year. He also notes that the personnel manager stated and his personnel file showed that he was released due to medical problems. This evidence, he contends, contradicts Spirit's claim that Davenport was totally a victim of a reduction in force.

## 2. ADEA

     Davenport also contends that Spirit fired him because of his age in violation of the Age Discrimination in Employment Act. Davenport's evidence supporting this claim is that another employee more than eight years his junior assumed his duties until Spirit eliminated the position. Davenport's only other evidence is that Jasper Pugh, construction manager for Spirit, stated that "we didn't want to pay . . . a foreman's pay for [Davenport] to sit down." This comment, Davenport claims, indicates that age, being related to

4

seniority and pay, was a factor in his release.[3]

Spirit, in turn, contends that Davenport cannot establish a prima facie case of age discrimination. Spirit claims that it had eliminated Davenport's job and had two low ranking employees earning helper wages finishing out any related duties. Spirit further argues that Davenport was not qualified for any available job when doctors released him to return to work. In any event, Spirit claims that it legitimately released Davenport as part of an overall reduction in force.

Davenport again claims that Spirit's articulated reason is pretextual. As evidence, Davenport notes that others continued to do his job over a month after doctors released him to return to work.

## ANALYSIS

### 1. ADA

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The statute defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

Id. § 12102(2).

The initial issue does not appear to be whether Davenport had actually had a

---

[3] Although Davenport's contention is immediately tenuous, Pugh's entire comment, when placed in context, is even less supportive. The following exchange took place:
Q.   Now you indicated earlier that the reason you did not put him back to work was that there was — you couldn't afford him is what you said, wasn't it?
A.   No, I said that we did not have the work for him, nor we didn't want — we didn't want to pay a journey — or a foreman's pay for him to sit down. We didn't need him.

disability, but whether Spirit regarded Davenport as having a disability. The EEOC regulations deem a person to be "regarded as having a disability" if he:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of other toward such impairment; or
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1). Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 912-13 (11th Cir. 1996).

> [C]ourts have observed that the focus of these ADA provisions and regulations is on the impairment's effect upon the attitude of others. Wooten, 58 F.3d at 385; Byrne, 979 F.2d at 566. These provisions and regulations are intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities. Wooten, 58 F.3d at 385 (citing School Board of Nassau County v. Arline, 480 U.S. 273 [] (1987)). Consistent with this purpose of the subject provisions, Judge Posner has observed:
>
>> [A]lthough at first glance peculiar, [this provision] actually makes a better fit with the elaborate preamble to the Act, in which people who have physical or mental impairments are compared to victims of racial and other invidious discrimination. Many such impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic.
>
> Vande Zande v. State of Wisconsin Department of Administration, 44 F.3d 538, 541 (7th Cir.1995).

Gordon, 100 F.3d at 913.

Whether Davenport satisfies the "regarded as" prong depends on Davenport producing sufficient evidence to demonstrate that Spirit regarded his angina as "substantially limiting" in one of life's "major activities." The ADA regulations include "working" as a "major life activity" that, if substantially limited or regarded as substantially limited by an impairment, is a disability under the ADA. 29 C.F.R. § 1630.2(i). Nevertheless, the term "working" does not mean working at a specific job of that employee's preference. See Maulding v. Sullivan, 961 F.2d 694, 698 (8th Cir. 1992),

cert. denied, 507 U.S. 910, 113 S. Ct. 1255, 122 L. Ed.2d 653 (1993). "[T]he statutory reference to a substantial limitation indicates instead that an employer regards an employee as substantially limited in his or her ability to work by finding the employee 's impairment to foreclose generally the type of employment involved." Foreman v. Babcock & Wilcox Co., ___ F.3d ___, 1997 WL 381223 at *5 (5th Cir. 1997).

In Harris v. H&W Contracting Co., 102 F.3d 516, 523 (11th Cir. 1997), the Eleventh Circuit Court of Appeals found the following facts sufficient to raise a genuine issue of material fact:

> While Harris was away on sick leave, the Company's president, Aldric Hayes, hired another person to take over permanently as comptroller, even though Hayes had previously been satisfied with Harris' performance in that position. That alone would not be enough, but according to a report taken by the Georgia Department of Labor Field Office in connection with Harris' claim for unemployment insurance benefits, Hayes gave the following explanation for that action:
>> In my opinion, she did work for me good for a long time, and I do not feel I had to put my company on the line, and I felt that the company was being put in jeopardy, at a disadvantage due to her type illness and I wanted to give her time to fully recover before advising her of my decision to put someone else as comptroller, in an effort to take some of the stress of the job off her. Had I had the opportunity to tell her of this, I could have explained why I was doing this, but I felt that was not the time, due to the type illness she had....
>
> Georgia Department of Labor, Statement of Interested Parties (March 4, 1993) (emphasis added).

Spirit kept the position occupied by Davenport open for a month after he was able to return to work. Further, Davenport's exit review shows that Spirit released him "due to medical problems, not work related. Layoff." The blanket termination of the plaintiff could support a reasonable inference that Spirit thought him incapable of performing any construction activities.

While the court concludes that there is evidence that the defendant, because of its stated reason of "medical problems" can be viewed as perceiving a disability, it is not so clear that there was a perception of a "disability" as defined by the statute. Does the Act proscribe perception of any disability or perceptions of disabilities which would otherwise bring about protection under the Act? Was the disability here permanent or temporary?

Are perceptions of temporary disabilities proscribed? The court will require further briefing on these issues.

## 2. ADEA

To establish a prima facie of discrimination under the ADEA, the plaintiff must show that he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, and (4) was replaced by a younger individual. Benson v. Tocco, Inc., 113 F.3d 1203, 1207 (11th Cir. 1997). The Eleventh Circuit has adapted this test in reduction in force cases and where an employer eliminates a position; in such cases, the plaintiff must establish (1) that he was in a protected age group and was adversely affected by an employment decision, (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision. Benson, 113 F.3d at 1207-08.

Davenport's position under either standard is unavailing. Assuming that he has established a prima facie case of age discrimination, Davenport has presented no evidence to cast even a hint of doubt on Spirit's articulated reason for his dismissal. The only evidence presented is that a younger individual replaced Davenport" and that the construction manager did not want to "pay . . . a foreman's pay for him to sit down."[4] That a younger individual or individuals assumed Davenport's duties is somewhat probative of age discrimination but, standing alone, is insufficient. Moreover, the court concludes that the construction manager's comment does not raise even a remote inference that age was motivating factor in Spirit's decision to release Davenport.[5]

---

[4] The court concludes that Davenport was not "replaced" in the sense that Spirit placed another nondisabled individual into his former position. Instead, the evidence establishes that Spirit simply had two current employees assume certain duties that Davenport formerly did until those duties were eliminated entirely.

[5] The court further concludes that the cited comment does more to bolster Spirit's position than Davenport's. Taken in context, the construction manager stated that he no longer had work for Davenport to do and would be paying him to sit.

The court is aware of the sometimes recognition that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).[6] Nonetheless, "the establishment of a prima facie case does not in itself entitle an employment discrimination plaintiff to survive a motion for summary judgment in all cases." Id., 821 F.2d at 595.

Grigsby goes on to say that

> We also recognize, however, that the inference of intentional discrimination raised by a plaintiff's prima facie case may be stronger or weaker, depending upon the facts of a particular case. . . . "To a large extent, of course, the strength or weakness of the inference of discrimination created by the employee's prima facie case defines the nature of the employer's rebuttal" . . . . In some cases the defendant's evidence of legitimate, non-discriminatory reason for its actions may be so strong as to rebut completely the inference raised by plaintiff's prima facie case. Such is the case here. Of course, even in the face of such strong justification evidence, a plaintiff might still create an issue of fact and avoid summary judgment by introducing additional evidence of pretext. But a plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant. Without more, the evidence constituting Grigsby's prima facie case is not sufficient to create an issue of fact in light of the compelling evidence of lawful motive presented by Reynolds.

Id. at 595-97.

> [O]nce the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by defendant were merely a pretext for discrimination.

Id. at 594.

Based on the foregoing, the court judges its task to determine the following:

(1) Has plaintiff offered evidence of a prima facie ADEA case?

(2) If he has, how strong is it?

(3) Has defendant offered rebuttal evidence?

---

[6] See, however, Early v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990) and numerous other Eleventh Circuit cases which have either affirmed summary judgments or reversed trial judges for not granting judgments as a matter of law in such cases.

(4) If so, how strong is it? Is it strong enough to overcome a weaker prima facie case?

(5) If defendant's rebuttal is strong enough to overcome a weaker prima facie case, has plaintiff offered sufficient evidence of pretext to create an issue of fact?

This court concludes that any possible inference of discrimination raised by plaintiff has been strongly rebutted by defendant's reasons for laying plaintiff off. If plaintiff has proved a prima facie case, it is, at best, weak.

Plaintiff urges that these reasons were mere pretext. He contends that his age was impermissibly considered in the decisions. In Grigsby, supra, the court said, inter alia,

> Grigsby also asserts that the district court erred in completely accepting Reynolds justification that it did not select her for the District Traffic Manager position because it found someone else who was objectively more qualified. Her entire evidence on this point consisted of her affidavit and several accompanying exhibits. Grigsby showed that her salary performance appraisal for the period preceding her application exceeded that of Regan Ragland, the candidate who was eventually chosen for the position. Grigsby also asserted that the supposedly objective standards for the position were created after Ragland was selected for the job. Further, Grigsby stated in her affidavit that she was told by Jim Ogborne, Reynolds' Customer Service Manager, that "the characters the Traffic Manager would have to deal with were pretty rough and he did not want me to have to deal with this type of thing." Grigsby Aff. at 2. However, in light of Reynolds' extensive evidence of the relative qualifications of the applicants, Grigsby's testimony and exhibits simply fail to raise any inference of pretext or discriminatory intent.
>
> It is undisputed that Ragland had far greater experience with Reynolds' cost accounting system, capitalization projects, auditing procedures, and computer systems than did Grigsby. Ragland also had eight years experience in various departments of the Alloys plant, including four years experience supervising professional engineers, as opposed to Grigsby whose experience was largely limited to the smaller WRB plant. Moreover, the fact that Grigsby received superior performance ratings in her WRB position does not refute the fact that Ragland was better qualified for the more sophisticated job Reynolds sought to fill in the Alloys plant.

Id. at 596.

> This is not a situation where, as Grigsby contends, the district court impermissibly weighed the parties' evidence instead of merely looking for the existence of a genuine issue of fact. Where the defendant's justification evidence completely overcomes any inference to be drawn from the evidence submitted by the plaintiff,

10

> the district court may properly acknowledge that fact and award summary judgment to the employer. Grigsby's conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where Reynolds has offered such extensive evidence of legitimate, nondiscriminatory reasons for its actions. See Meiri v. Dacon, 759 F.2d at 998 (conclusory allegations of discrimination insufficient to raise inference of pretext and thereby defeat summary judgment motion). Under these circumstances, Reynolds was entitled to summary judgment.

Id. at 597.

In Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988), where the court affirmed the grant of a summary judgment, the court stated:

> Before proceeding to our discussion of pretext, we confront initially Young's claim that he produced direct evidence of discrimination. According to Young, Biltgen's oral and written comments that Young lacked the "wherewithal" to perform his job, "moved in slow motion," and was "not proactive," "not aggressive," and approximately the same age as Biltgen's father all constitute direct evidence of discrimination. We do not agree.
>
> It is clear that not every comment concerning a person's age presents direct evidence of discrimination. See, e.g., Barnes, 814 F.2d at 610-11 (statement that plaintiff would have to take another physical examination "and at your age, I don't believe you could pass it," while inappropriate and condescending," was not direct evidence of discrimination); see also Mauter, 825 F.2d at 1558; Chappell v. GTE Products Corp., 803 F.2d 261, 268 n. 2 (6th Cir. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). Here, the majority of Biltgen's comments do not even directly concern Young's age. Rather, the remarks in the evaluations that Young lacked the wherewithal to adequately perform his job, moved in slow motion, and was neither aggressive nor "proactive," at most referred only to characteristics sometimes associated with increasing age. As this court has stated, "'Congress made plain that the age statute was not mean to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence.'" Barnes, 814 F.2d at 611 (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1016 (1st Cir. 1979)) (emphasis added).
>
> Equally as important, the remarks are not directly probative of an intent to discriminate. This is not a case where Biltgen told Young that he would be fired because he was too old. See Castle v. Sangamo Weston, Inc., 887 F.2d 1550, 1558 n. 13 (11th Cir. 1988) (discussing "direct" evidence of discrimination). Instead, it is a case where the plaintiff has inferred that certain facially neutral comments referred to his age in a discriminatory fashion. However, in evaluating any salesman's performance, statements regarding the individual's aggressiveness, enthusiasm, and vigor are hardly surprising.

11

In Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988), the court stated:

> However, we also hold the district court was justified in entering summary judgment on the grounds that plaintiffs failed to present any credible evidence on the issue of pretext. To avoid summary judgment, a party must produce "specific facts showing that there remains a genuine issue for trial" and evidence "'significantly probative' as to any [material] fact claimed to be disputed." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983) (quoting Ruffing v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)). Thus, plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.
>
> Mrs. Branson presented no evidence showing that the decision to eliminate her job was motivated by age discrimination and admits she would have required at least minimal training to assume any of the positions retained by younger employees. Her assertion that Price River should nonetheless have retained her is insufficient to create a genuine issue of fact regarding Price River's articulated reasons for her discharge and avoid summary judgment. The ADEA does not require employers to accord members of the protected class preferential treatment, but only that they treat age neutrally. See Williams, 656 F.2d at 129-30.
>
> Mrs. Saccomanno also failed to create a genuine issue of fact regarding Price River's articulated reasons for her discharge. She admits Mr. Anderson "felt" she was less qualified than Mr. Hanson for the accounting department's remaining position and claims only that she was in fact equally or more qualified that Mr. Hanson. As courts are not free to second-guess an employer's business judgment, this assertion is insufficient to support a finding of pretext. See Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed2d 383 (1981). It is the perception of the decision maker which is relevant, not plaintiff's perception of herself. Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Consequently, the district court's order of summary judgment was appropriate.

In Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987), the court stated:

> . . . Rather, the plaintiff seeks to present direct evidence of discriminatory intent. In his affidavit, Mauter recounts a statement made to him by Carl Morton, a THC vice president who retired in 1983. According to Mauter, Morton indicated that the plaintiff had grounds for a lawsuit because "The Hardy Corporation was going to weed out the old ones." Morton also filed an affidavit indicating that he has no memory of making such an assertion to Mauter, and that he has no knowledge of facts suggesting that age had any bearing on the decision of THC's management to terminate Mauter.
>
> For purposes of considering the propriety of summary judgment, we assume that

>Morton made the statement to Mauter. It is undisputed, however, that Morton played no part in the decision to terminate the plaintiff. Furthermore, Morton's uncontradicted affidavit establishes that he has no factual basis for his assertion that age was a factor in Mauter's discharge. Therefore, we hold that this statement is too attenuated to present a genuine issue of material fact as to THC's discriminatory intent. See La Montagne v. American Convenience Products, Inc., 750 F.2d 1405, 1412-13 (7th Cir. 1984).

In Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988), the court stated:

>Although summary judgment should be granted with caution in employment discrimination cases, there are occasions when such disposition is appropriate. See, e.g., Beard v. Annis, 730 F.2d 741 (11th Cir. 1984). This is one of those cases. Where, as here, full discovery has been conducted, the Supreme Court stated recently that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202, 212 (1986)(citations omitted). See also Celetex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We agree with the district court that the evidence in this case was such as to warrant summary judgment.

In Pace v. Southern Ry. System, 701 F.2d 1383, 1391 (11th Cir. 1983), the court stated:

>Where the ADEA plaintiff has shown "no evidence 'which might infer that age was even a factor in the decision'" of which plaintiff complains summary judgment is warranted. Simmons v. McGuffey Nursing Home, Inc., 619 F.2d at 370. A plaintiff, when faced with a motion for summary judgment, cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact. Even where a prima facie case has been established but the defendant has rebutted with a proffer of legitimate, nondiscriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented. As the Supreme Court noted in Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7, once established a prima facie case creates a rebuttable presumption of discrimination; but this presumption alone does not create an inference that a material fact, sufficient to present a jury question, is an issue. See also Reeves v. General Food Corp., 682 F.2d 515, 521-22 & n. 9 (5th Cir. 1982). Cf. Moore v. Sears, Roebuck & Co., 464 F. Supp. at 366 ("Only in an extraordinary instance could rebuttal evidence be so conclusive as to permit summary adjudication). In Simmons, supra, defendants rebutted plaintiff's prima facie case by showing a legitimate, nondiscriminatory reason for the discharge and plaintiff failed to prove that age, rather than the nondiscriminatory reason, was the motivation for the decision. 619 F.2d at 371. This court held that summary

13

> judgment was appropriate because "[t]he possibility of a jury drawing a contrary inference sufficient to create a dispute as to a material fact does not reify to the point even of a thin vapor capable of being seen or realized by a reasonable jury." Id.

See Clark v. Huntsville Bd. of Educ., supra at 527. See also Nix v. WLYC Radio Rahall Communications, 738 F.2d 1181, 1185 and 1187 (11th Cir. 1984), where the court said:

> The court thus may not circumvent the intent requirement of Plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the Defendant did not truly rely on its proffered reason, without a further finding, that the Defendant relied instead on race will not suffice to establish Title VII liability.
>
> * * *
>
> Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason . . . "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve.

At best, plaintiff's evidence is "merely colorable." See Young, supra, 840 F.2d at 828. Plaintiff has introduced no substantial evidence "that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." Mantor v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987). See also Early, supra,

> Upon review of a grant of summary judgment, we apply the same legal standard that bound the district court. Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The trial court "must consider all the evidence in the light most favorable to the non-moving party," Rollins, 833 F.2d at 1528, and "resolve all reasonable doubts in favor of the non-moving party." Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987). A trial court, however, is not required "to resolve all doubts in such a manner." Barnes, 814 F.2d at 609.
>
> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."' Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P.1). "[The summary judgment] standard mirrors the standard for a directed verdict under the Federal Rule of Civil

Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.

Consideration of a summary judgment motion does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proved. Rollins, 833 F.2d at 1528. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the [movant's] substantive evidentiary burden." Anderson, 477 U.S. at 254, 106 S.Ct. at 2513. The trial judge must bear in mind the "actual quantum and quality of proof necessary to support liability" in a given case. Id. "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, we must affirm the grant of summary judgment [for the defendant]." Barnes, 814 F.2d at 609.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552.

Where as here discovery has been conducted, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted) (emphasis added); accord Hudson v. Southern Ductile Casting Corp., 849 F.2d 1372, 1376 (11th Cir. 1988). Summary judgments for defendants are not rare in employment discrimination cases. See, e.g., Mauter v. Hardy Corp., 825 F.2d 1554 (11th Cir. 1987); Grigsby v. Reynolds Metal Co., 821 F.2d 590 (11th Cir. 1987); Palmer v. District Bd. of Trustees of St. Petersburg Junior College, 748 F.2d 595 (11th Cir. 1984); Pace v. Southern Ry. Sys., 701 F.2d 1383 (11th Cir. 1983); Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 371 (5th Cir. 1980).

(Emphasis in original). 907 F.2d 1080-81.

In Early, supra, the court also stated:

> The defendant may be entitled to summary judgment if he produces evidence of legitimate nondiscriminatory reasons for the employment action. To survive summary judgment, the plaintiff must then present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice. Mauter, 825 F.2d at 1558; Grigsby, 821 F.2d at 596-97; Palmer, 748 F.2d at 599; Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983); Pace, 701 F.2d at 1391; Simmons, 619 F.2d at 371. Most important, the plaintiff always bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

907 F.2d at 1081. This claim is typical of many plaintiffs who assert claims based on each protected class to which they belong. This case presents either an ADA claim or nothing. An age discrimination claim here is baseless. Summary judgment will accordingly be granted on this claim.

## CONCLUSION

For the foregoing reasons, the defendant's motion will be GRANTED as to the ADEA claim. The court will reserve ruling on the ADA claim until further briefing.

This 15th day of August, 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE