UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES L. DAVENPORT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV-96-PT-1448-E |
| | ) |
| SPIRIT CONSTRUCTION | ) |
| SERVICES, Inc., | ) |
| | ) |
| Defendant. | ) |

**ENTERED**
OCT 10 1997

Memorandum Opinion

On August 19, 1997, this court requested the parties in this case to brief the issues of whether the perception that an individual has a temporarily disabling condition could be a perception of a disability under the Americans with Disabilities Act and of whether the "medical problem" for which the plaintiff was allegedly terminated was perceived as a temporary or permanent disability.

In the present case, the plaintiff's contention that he was terminated from his employment in violation of the ADA rests principally upon an entry in the plaintiff's exit review which commented that he was released by the defendant "due to medical problems, not work related." Considerable effort is expended in the defendant's supplemental brief

1

to demonstrate that the plaintiff was laid off for work related reasons. Again, this is an issue of fact that should be decided by the jury. The concern of the court is whether the fact that the plaintiff was dismissed for medical reasons could support a claim that the plaintiff was laid off due to being "regarded as having a disability."

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The statute defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

Id. § 12102(2).

The initial issue does not appear to be whether Davenport had actually had a disability, but whether Spirit regarded him as having a disability. The EEOC regulations deem a person to be "regarded as having a disability" if he:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of other toward such impairment; or
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1). Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 912-13 (11th Cir. 1996).

> [C]ourts have observed that the focus of these ADA provisions and regulations is on the impairment's effect upon the attitude of others. Wooten, 58 F.3d at 385; Byrne, 979 F.2d at 566. These provisions and regulations are intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities. Wooten, 58 F.3d at 385 (citing School Board of Nassau County v. Arline, 480 U.S. 273 [] (1987)). Consistent with this purpose of the subject provisions, Judge Posner has observed:
>> [A]lthough at first glance peculiar, [this provision] actually makes a better fit with the elaborate preamble to the Act, in which people who have

2

> physical or mental impairments are compared to victims of racial and other invidious discrimination. Many such impairments are not in fact disabling but are believed to be so, and the people having them may be denied employment or otherwise shunned as a consequence. Such people, objectively capable of performing as well as the unimpaired, are analogous to capable workers discriminated against because of their skin color or some other vocationally irrelevant characteristic.

Vande Zande v. State of Wisconsin Department of Administration, 44 F.3d 538, 541 (7th Cir.1995).

Gordon, 100 F.3d at 913.

Whether Davenport satisfies the "regarded as" prong depends on Davenport producing sufficient evidence to demonstrate that Spirit regarded his angina as "substantially limiting" in one of life's "major activities." The ADA regulations include "working" as a "major life activity" that, if substantially limited or regarded as substantially limited by an impairment, is a disability under the ADA. 29 C.F.R. § 1630.2(i). Nevertheless, the term "working" does not mean working at a specific job of that employee's preference. See Maulding v. Sullivan, 961 F.2d 694, 698 (8th Cir. 1992), cert. denied, 507 U.S. 910, 113 S. Ct. 1255, 122 L. Ed.2d 653 (1993). "[T]he statutory reference to a substantial limitation indicates instead that an employer regards an employee as substantially limited in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved." Foreman v. Babcock & Wilcox Co., ___ F.3d ___, 1997 WL 381223 at *5 (5th Cir. 1997).

The plaintiff contends that he can show that the defendant regarded him as having a disability if it treated him as though he suffered from a substantial limitation. Therefore, argues the plaintiff, the court need not determine whether in fact his employer actually regarded him as having such a limitation, but merely whether he was treated as someone with a substantial limitation, i.e. terminated.

The court confesses that it is perplexed by this suggestion. It is a mystery to this court how it is to determine whether an individual is "treated" like a person with a disability. If by "treated like a person with a disability" the plaintiff means that a non-disabled person is treated by an employer as that employer would treat a person actually having the disability, the employee could only prove his case by demonstrating that the

3

employer would, in fact, treat an employee genuinely disabled in the same manner that he treated the non-disabled employee. Proving this counterfactual would be nearly impossible, unless the employer had employed such a disabled person at some point in the past. On the other hand (probably the hand on which the plaintiff rests), "treated like a disabled person" may mean that certain employment decisions are commonly made to the disfavor of disabled individuals. Therefore, when non-disabled individuals suffer the same employment actions, such as termination, they are being treated as a disabled individual. However, this understanding of being "treated like a disabled person" would permit any person subject to the stated adverse actions to raise a claim under the ADA.

By an objective "treatment as one disabled" standard, it could also be meant that the court is to determine whether an ordinary person would believe of the defendant's actions that discriminatory treatment on the basis of disability was taking place. Again, this description is unavailing. Assuming this standard could be meaningfully explicated,[1] the rationale behind the ADA evidences a desire to eliminate the discriminatory <u>attitudes</u> held about the disabled, not unfavorable treatment that an ordinary person in the plaintiff's shoes would think was based upon disability discrimination. "These provisions and regulations are intended to combat the effects of archaic attitudes, erroneous perceptions, and myths that have the effect of disadvantaging persons with, or regarded as having, disabilities."   <u>Gordon v. E.L. Hamm & Assoc., Inc.</u>, 100 F.3d at 913. They are not meant to render employers overly scrupulous about avoiding the slightest appearance of impropriety.

The central issue before the court is whether the plaintiff's angina was seen as substantially limiting his ability to perform the general type of work he would be required to do with the defendant. Without deciding the issue, the court will assume that the defendant, in laying off the plaintiff, found that the plaintiff's medical condition prevented

---

[1] And it cannot without <u>some</u> reference to the discriminator's mental life.

him from working in any remaining position on the construction project.[2]

The construction project was to end one month after the plaintiff was cleared to return to work. That the plaintiff might have been thought incapable of returning to the remaining month's work in light of medical problems does not yield an inference that the employer thought that the plaintiff's medical condition had permanent effects. At best, it yields the inference that the defendant believed plaintiff was incapable of returning to work for the time remaining on the project. There is no basis on which to conclude one way or the other that the defendant was permanently disabled, as might have been the case had the construction project been of an indefinite and perhaps long-ranging duration. The plaintiff's proffered evidence supports only the inference that Spirit regarded him as temporarily disabled.

"[T]he term 'disability' does not include temporary medical conditions'. . . ." Halperin v. Abacus Technology Corporation, ___ F.3d ___, 1997 WL 576333 at *5 (4th Cir. 1997). If a temporary impairment is not considered a 'disability' for purposes of the ADA, a person regarded as merely having a temporary impairment cannot be regarded as being disabled. See also Huff v. UARCO, Inc., ___ F.3d ___, 1997 WL 438637 at *15 (7th Cir. 1997).[3]

---

[2] However, the court is less than convinced that a reasonable trier of fact could find this. The construction work was winding down and as a result, there would be no need of additional workers to fill newly created positions. There is no requirement that an employer displace one employee to make room for another, disabled one. Wooten v. Farmland Foods, 58 F.3d 382, 386 (9th Cir. 1995).

[3] The court in Huff stated:
The final issue is Schoolman's claim for disability discrimination, on which the district court granted summary judgment in favor of UARCO. Schoolman has conceded that he is not disabled as that term is defined by the ADA, but rather claims that UARCO demoted him at least in part because it perceived him to be disabled. Schoolman's evidence in support of this claim is that UARCO knew he had injured his back and temporarily required the use of an electric cart to get around the plant. Also, UARCO demoted other workers who had health problems, including Huff who had suffered a stroke, and another worker who had suffered a heart attack. Finally, Schoolman claims that UARCO was insensitive to the needs of Minard who had also injured her back. Under the ADA, an individual is "disabled" if he or she (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B); Stewart v. County of Brown, 86 F.3d 107, 111 (7th Cir.1996). The phrase "major life activities"

5

The defendant's motion for summary judgment will be GRANTED. The plaintiff's ADA claim will be DISMISSED, with prejudice.

This 10th day of October 1997.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

refers to "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(h)(2)(i); Stewart, 86 F.3d at 111. Even if we assume all of Schoolman's allegations are true, and UARCO of course disputes that they are, Schoolman offers nothing to show that UARCO regarded him as having a physical impairment that substantially limited a major life activity. At best, Schoolman offers evidence that shows UARCO knew that Schoolman suffered a temporary condition that minimally impaired his ability to walk. All of the evidence shows that UARCO accommodated this temporary condition with the electric cart. Without more, the district court properly granted summary judgment on this claim.

6